Good morning, everyone. This is Matt Campbell from the Federal Defenders of Eastern Washington and Idaho on behalf of Leona Sutton, and it's my intention to reserve three minutes for rebuttal. The issue in this case is whether Ms. Sutton is entitled to relief under Johnson v. United States. Specifically, she was charged with assault with a dangerous weapon under 18 U.S.C. 113A3 and discharge of a firearm during commission of a crime of violence under 924C. So, as a preliminary matter, we're obviously dealing with the categorical approach, which asks whether 113A3 is a crime of violence based on its elements. Under Moncrief, we have to look to the least serious version of that offense. If we decide that assault with a dangerous weapon under 113A3 is categorically a crime of violence, we don't need to reach the Johnson-Demeyer issue, is that correct? I think that would be correct, that if 113A3 is a categorical crime of violence, then we don't have the Demeyer issue. That being said, I don't think we have a Demeyer issue here anyway in that Demeyer, at this point, I understand it's up in the Supreme Court, but grant of cert. So, I do believe that Demeyer is binding and that 16B and 924C have the exact same definitions. So, I think Demeyer binds this court and there isn't a Demeyer issue. But, in reference to the court's question... They're looking at it. So, whatever they do, they will abound by that. The Supreme Court, absolutely. But, at this point, Demeyer is still precedent that it's the law. So, I don't think there is a Demeyer issue. But, understanding the court's question, I'll turn to the categorical issue here. And again, there was some talk in the government's briefs about to what extent 924C cases are addressed differently than other statutes. And I think it's clear that those arguments have been rejected in cases like Amparo and Turn to the elements of 113A3 and why they don't meet the categorical match here. The first element is the defendant assaulted the victim, and there's three alternatives, by intentionally striking, wounding, or using a display of force that reasonably caused fear of immediate bodily harm. That element is overbroad because it can be satisfied simply using a display of force. So, showing a weapon without anything more would satisfy that. And it's important to note that it then requires that someone fear harm. It doesn't necessarily require in that element that the defendant intended to cause that fear. It simply requires that the person perceive that as harm. Secondly, it notes that the defendant acted with the intent to do bodily harm. And while I understand that might appear to satisfy a crime of violence, it's important to note that it uses the term bodily harm. It doesn't use the term substantial bodily injury, which is defined in 113B1. Bodily harm is not defined in the statute, nor is it defined elsewhere in that chapter. But, by analogy, in looking at the case of U.S. v. Smith, which is 561F3 934, it noted that the term great bodily harm, in the context of what is a dangerous weapon, is informed by the definition of serious bodily injury in 113B2. 113B2 incorporates the definition of serious bodily injury in 18 U.S.C. 1365B3, excuse me, H3. And in that definition, it defines, if we look in 1365H as a whole, in H4, it defines bodily injury as a cut, abrasion, bruise, burn, or disfigurement, physical pain, illness, impairment of function of bodily member, organ, or mental faculty, or any other injury to the body, no matter how temporary. So if we incorporate that H4 definition into bodily harm, just as we incorporate serious bodily injury into bodily injury, we're left with a situation where bodily harm could be satisfied by things like mental distress, stomachache, a headache, or a feeling of shock. So when we're looking at that second element, bodily harm, bodily harm is as de minimis as it could possibly be. It would really be akin more to the type of harm that under old common law from a common law touching. So the pure elements of 113A3, to the extent that they require only the displaying of force, such as with a weapon, and that it requires bodily harm, which is not the equivalent of the type of serious bodily harm or serious bodily injury that we see in other types of offenses, renders this statute overbroad. And it is categorically overbroad. Are you required to point to some specific case where someone can be charged with 113A3 for conduct that doesn't involve at least the threatened use of violent force? Your Honor, there is precedent that talks about that this not be simply a fanciful conjecture, which I believe is what Your Honor is referring to, and that one shouldn't define or one shouldn't come up with these definitions stretching, I believe, stretching credulity to its limits. But in this case, the plain language of the statutes itself supports this result. Congress chose to use the term bodily harm. Congress then defined bodily harm in an excessively broad way to include things like illness, mental faculty, or essentially a residual exception, any other injury, no matter how temporary. So these are Congress's words, and they're presumed to have chosen them for an obvious reason. And in this case, they chose these broad terms. That's what we're left with. So this is not some situation where we're extrapolating these terms beyond their meaning. This is what we're left with. So based on what Congress said, I think it's clear that this is an overbroad statute. One last point I want to address before my time runs out. The government did make some arguments in its brief that because this is a 924C, that we can sort of extrapolate the use of a weapon, particularly the use of a firearm into this, and that that somehow changes the equation. But that puts the cart before the horse, because what we're evaluating here is 113A3, and 113A3 does not require a firearm. So this does not require a different result simply because a firearm is used. The fact that a firearm is used would be the type of fact, for categorical purposes, we can't use under de camp in analyzing 113A3. And I'd like to reserve the rest of my time. Good morning. May it please the Court, I'm Russ Smoot for the United States. The bottom line is that the United States and, in fact, the District Court, in originally assessing this matter, agreed with what the court initially asked. If this case is determined under the 924C, then we don't have to reach the residual clause part, which is exactly what the District Court did in this matter. It said that this was not a Johnson issue. It's clearly not a Johnson issue on the specifics of Johnson, because, as we know, Johnson is related to the ACC, and Johnson said that it didn't affect any other statutes or even the other elements of the ACC clause, which also includes an elements clause. Secondly, the District Court said, even if Demeyer is ultimately made to apply to this type of situation or to the elements clause in 924, it's not the elements clause, the residual clause in 924C3B, due to its same language as being in 924C16B, that the defendant's motion is premature. The court went on to assess it, just for the sake of the fact that Demeyer, as we all thought, was on a closer track than it is now with the Supreme Court, and because it is Ninth Circuit law, it went on to assess it, but specifically said that this not fall into the residual clause. It said that while it was not discussed by the parties, it was clear on the record that this was a force elements analysis. The bottom line is that the defendant was charged with assault with a dangerous weapon with the intent to commit bodily harm, and what the bottom line is, is that while that has not been specifically articulated, the Ninth Circuit jury instructions provide for striking, wounding, or display of force with the intent to cause harm. What about Mr. Campbell's reference to the statutory definition of bodily harm? Your Honor. It seems to be broader than what you just referenced at the Ninth Circuit instruction. As I listen to that, it immediately struck me that what we often do is we change words to say bodily harm, serious injury, violent show of force, and we use different adjectives all the time. In this case, I think that the statute has been further defined through the jury instructions or the application of the statute to the jury instructions requiring the type of force, striking, wounding, or a display of force with the intent to commit harm with a dangerous weapon. It also would note that, well, I would note that the argument was made that, well, the 924C case in this, because it's the use of a assault case, and I would agree with Mr. Campbell's argument that under this, the analysis of whether the crime of violence then falls within the 924C stands alone, and that the 924C is simply a specific statute that Congress has enacted so that people are, how should I say, discouraged from using firearms in crimes of violence. We wouldn't be here for 924C if, as the case law dictates, the dangerous weapon was a knife or a rock or, in fact, a shod foot, as is also allowed under the circumstances. So the fact that the dangerous to the crime of violence. What is specifically relevant is that the crime of violence includes the use of a dangerous weapon. And in terms, I just wanted to quickly indicate that one of the, as the district court indicated, that there was the possibility, in fact, this is why it continued with the, to hear the case as being premature, that DMIA may be extended. I would respectfully submit that in this case, this would not be the case to extend DMIA to the residual clause of 924C, and this is why. Because the residual clause in 924C indicates that it is a crime of violence by the nature of the offense. In this case, when one assesses the nature of the offense, in the facts of the case before the court now, the Sutton case, the nature of the offense is, in fact, the assault with a dangerous weapon with intent to commit bodily harm. So as you assess the nature of the offense, you come right back to the very elements of force that were defined the actual offense. So unless there's further questions, the United States would respectfully request this court to affirm or uphold the district court's denial of the defendant's 2255 motion. I don't have any further questions. Judge Fischer? Judge Walker? All right. Thank you very much. Thank you. What about that argument that Mr. Smoot made, that this isn't a situation where you can ever really have a generalized display of force because of the requirement that it be accompanied by a deadly or dangerous weapon of some sort, which then is indicative that violent force is required? Well, a person could—I don't think factually that argument makes a lot of sense, because if a person has a dangerous weapon—and the definition of a dangerous weapon can be fairly broad. Essentially, it's anything that could cause, I think, a substantial bodily harm. So if a person is standing somewhere with a baseball bat in their hands, and they sort of slap a baseball bat against the palm of their hands, arguably they're displaying a dangerous weapon. Now, what intent somebody might derive from that is a different question. But a person can certainly display a dangerous weapon, and that wouldn't necessarily mean anything. If a person held up a firearm right now and said, hey, look at my gun, they're displaying a dangerous weapon. What intent you draw from that is whatever intent a person draws from that. But I don't think— Well, except that the element also requires that sort of display with the intent to do bodily harm, and that would reasonably cause a person to fear. So that scenario, that example, no one's ever going to be charged with a 113A3 if that's all you had. Well, but again, that would require that we have to look at each element separately. And this is where I think one of the ways in which the government and I differ. We have to look at each element separately, and the intent has to be the intent to do bodily harm. And bodily harm encompasses, as I've already discussed, virtually any form of harm. So if a person intends to display a weapon for the purpose of making someone feel emotional distress and nothing more, that could satisfy this. Because bodily harm is that broad under the definition. So again, the display of a firearm, which I think many people in everyday life would consider shocking or distressing, or could cause a headache or stomach aches due to nerves, that would be enough under this statute as it's defined. Because we look at each element separately. And if any single element is overbroad, I think it's clear that this under de camp would be an indivisible statute. And that's what we have here. We have overbreadth in terms of bodily harm, and we have overbreadth in terms of the display of force. Because a display of force, i.e., the brandishing of a weapon, is not enough to have a crime of violence. I see I'm over time. Thank you very much. The matter is submitted.
judges: Tashima, Nguyen, Walter